## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KWEILIN WOFFORD, individually and on
behalf of others similarly situated,

               Plaintiff,

    v.

SEBA ABODE, INC., D/B/A BRIGHTSTAR
CARE,

               Defendant.

Civil Action No.: _____

Collective and Class Action

JURY TRIAL DEMANDED

Electronically Filed

## COLLECTIVE AND CLASS ACTION COMPLAINT

### INTRODUCTION

Plaintiff Kweilin Wofford, individually and on behalf of all other similarly situated individuals, bring claims against Defendant Seba Abode, Inc., D/B/A BrightStar Care, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 331.101 *et seq.,* and the common law doctrine of unjust enrichment. The FLSA and PMWA mandate that employers pay employees who work overtime—over 40 hours in a workweek—at least "one and one-half times" their "regular rate" of pay.  Plaintiff is employed by Defendant as a home health care companion for elderly and disabled individuals. She brings this action to challenge Defendant's policy and practice of reducing its employees' regular hourly rate if those employees work overtime, which is purposefully designed to evade the letter and spirit of the FLSA and PMWA.  By utilizing this "pay deduction" scheme, Defendant denies Plaintiff and similarly situated home health care companion employees the full compensation to which they are entitled.  Further, Defendant is unjustly enriched at its employees' expense.

## PARTIES

1.      Plaintiff Kweilin Wofford is an adult individual who resides in Allegheny County, Pennsylvania.  She has worked for Defendant as a home health care companion since March of 2018, and is an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and the PMWA, 43 P.S. § 333.103(h).  She has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b).  Her consent is attached hereto as Exhibit A.

2.      Defendant Seba Abode, Inc. is a Pennsylvania corporation that operates four franchises of BrightStar Care in Pennsylvania (Erie, Monroeville, Cranberry, and Mt. Lebanon) with its business address located at 400 Mt. Lebanon Blvd., Pittsburgh, PA 15234.  Defendant is the "employer" of Plaintiff and all similarly situated home health care companions, as described further below, within the meaning of the FLSA, 29 U.S.C. § 203(d) and the PMWA, 3 P.S. § 333.103(g).

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over Plaintiff's PMWA claim and her unjust enrichment claim pursuant to 28 U.S.C. § 1367(a).

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.  Defendant maintained an office and operations in this judicial district, Plaintiff is employed in and resides in this district, and the events giving rise to her claims occurred in this district.

## STATEMENT OF MATERIAL FACTS

### The FLSA and PMWA Require Employers to Pay Employees At Least One and One-Half Times their Regular Rate of Pay for Overtime

6.      The FLSA, 29 U.S.C. § 207(a), requires employers to pay employees "at a rate not less than one and one-half times the regular rate" at which the employee is employed for all hours worked over 40 hours in a week.

7.      The PMWA, 43 P.S. § 333.104(c), likewise requires employers to pay employees "for overtime" hours above 40 in a workweek at a rate "not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary[.]"

### Employers Are Forbidden From Evading These Statutory Requirements By Setting A Lower "Regular Rate" When an Employee Works Overtime

8.      The Department of Labor has promulgated regulations relevant to the meaning and enforcement of the FLSA.

9.      The regulations state that "[w]hile it is permissible for an employer and an employee to agree upon different base rates of pay for different types of work, it is settled under the Act that where a rate has been agreed upon as applicable to a particular type of work the parties cannot lawfully agree that the rate for that work shall be lower merely because the work is performed during the statutory overtime hours, *or during a week in which statutory overtime is worked*."  29 C.F.R. § 778.316 (emphasis added).

10.      The regulations further state that "*where different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—the longer he works the lower the rate—the device is evasive and the rate actually paid in the shorter or nonovertime week is his regular rate for overtime purposes in all weeks*."  29 C.F.R. § 778.327 (emphasis added).

11.     The regulations further state that "*[p]ayment for overtime on the basis of an artificial 'regular' rate will not result in compliance with the overtime provisions of the Act*." 29 C.F.R. § 778.500.  (emphasis added).  "[T]he hourly rate paid for the identical work during the hours in excess of the applicable maximum hours standard cannot be lower than the rate paid for the nonovertime hours *nor can the hourly rate vary from week to week inversely with the length of the workweek*." Id. (emphasis added).

12.     The PMWA provides for employee rights that are at least as expansive as those provided for by the FLSA.  See Bayada Nurses, Inc. v. Pennsylvania Department of Labor & Industry, 607 Pa. 527, 555, 8 A.3d 866, 883 (2010) ("the federal statute establishes only a national floor under which wage protections cannot drop").

13.     As such, the FLSA regulations cited apply with equal force to the PMWA.

## Defendant Maintains a Written "Pay Deduction" Policy Whereby It Lowers the Regular Rate of Employees Who Work Overtime

14.     Defendant's "BrightStar Care Employee Handbook" (the "Handbook") is attached hereto (in excerpted form) as Exhibit B.

15.     The purpose of the Handbook is to set forth "the policies, rules and other key aspects of" Defendant's operation.  Exhibit B at ¶ 1.1.

16.     According to the Handbook, Defendant "typically employs more than 450 regular employees on at 'at-will' basis." Id. at ¶ 2.

17.     According to the Handbook, "the majority of employees are non-exempt, meaning they are entitled by law to at least minimum wage and premium pay for overtime." Id. at ¶ 2.2.

18.     The Handbook states as follows:

All field employees are hired as part-time due to their own
availability which must match the hours available by our clients.
To be considered full-time, an employee must work a maximum of

4

> 40 hours per week. *Any regular employee who chooses to work*
> *above 40 hours a week is able to do so, but will be subject to a*
> *deduction in pay as based upon the number of hours agreed to per*
> *week at the discretion of the Payroll department.*

Id. (emphasis added).

19.    The Handbook also contains a Section titled "Payroll," which states that

"[e]mployees are paid weekly generally on Friday."  Id. at ¶ 3.1.

20.    The Handbook further states that "[w]ages vary from employee to employee and

are based on level of skill and the needs of our clients."  Id. at ¶ 3.2.

21.    The Handbook further states that "[i]n addition to regular pay, employees may

have the option of earning overtime pay."  Id.

22.    The Handbook further explains:

> *Overtime*
> A non-exempt employee may work overtime on the terms defined
> by Pennsylvania law *pending prior authorization by his or her*
> *manager. As mentioned previously, any employees who chooses to*
> *work above 40 hours per week on an ongoing and continuous*
> *basis, will be subject to a pay deduction based on the number of*
> *hours works [sic] per week.* All deductions will be announced
> prior to the change, as dictated by Pennsylvania law.

Id. (second emphasis added).

## Plaintiff Was Subjected To Defendant's "Pay Deduction" Scheme
## For Employees Working Overtime

23.    Defendant's home health care companions provide assistance to elderly and

disabled individuals in their homes.  Such individuals are Defendant's clients.

24.    Ms. Wofford began working for Defendant as a home health care companion in

March of 2018.

25.    Ms. Wofford was based out of Defendant's Monroeville office as a member of the

"BrightStar Monroeville Southeast Team."

5

26.     On or around the time she was hired by Defendant, Ms. Wofford received a document titled "Orientation Program Guidelines," which is attached hereto as Exhibit C.

27.     The Orientation Program Guidelines provide as follows:

> You are responsible for keeping track of your own hours.  You may work no more than forty hours weekly to remain at your base rate of $9/hour.  You are not required to work overtime. *Therefore, if you choose to work overtime (above 40 hours per week), you are subject to a pay adjustment which will be announced to you in writing prior to the change.*

Exhibit C at 1 (emphasis added).

28.     However, at the time she was hired, Ms. Wofford was told that $10.00 an hour was the base rate.

29.     In actuality, Ms. Wofford's hourly wage fluctuated over the first several workweeks.  She received $11.00 an hour her first week, $12.00 an hour her second week, $14.00 an hour her third week, and a split rate of $11.00 an hour for weekdays and $12.00 an hour for weekends her fourth week.

30.     Upon information and belief, Defendant's hourly pay rates varied based on the particular client that its home health care companions assisted.  Home health care companions that worked with clients that required more attention and care than others (e.g., hospice patients) were paid more.

31.     Going forward however, Defendant began paying Ms. Wofford at the rate of $10.00 an hour for weekdays and $11.00 an hour for weekends.

32.     With the exception of a few workweeks in which her rate increased, Ms. Wofford regularly received payment based upon this $10.00/$11.00 split rate arrangement from April 20, 2018 through June of 2019.

33.     With the exception of one workweek in April of 2018, Ms. Wofford worked less than 40 hours each workweek from the date she was hired until December of 2018.

34.     Starting with the workweek with the "pay date" of December 28, 2018, Ms. Wofford began typically working four 12 hour shifts weekly, for a total of 48 hours of work each week.

35.     For the next several months, Ms. Wofford continued to receive $10.00 an hour for the weekdays and $11.00 an hour for her shifts on Saturday and Sunday.

36.     During this time, Defendant also paid Ms. Wofford one and one-half times her regular rate for hours worked over 40 in a week.  Defendant calculated Ms. Wofford's "regular rate" for the purposes of paying overtime by dividing her total straight time compensation in a workweek by the total number of hours worked.  This resulted in a "weighted average" of her rates.  Ms. Wofford was then paid half of this "weighted average" regular rate such that she would receive one and one-half times her regular hourly rate for overtime hours.

37.     For example, her weekly earnings statement for the "pay date" December 28, 2018 reflected that Ms. Wofford worked a total of 48 hours.  She was paid $10.00 an hour for 24 hours for a total of $240.00 and $11.00 an hour for 24 hours for a total of $264.00, or $504.00 total.  As such, her "weighted average" regular rate was $10.50 ($504.00 divided by 48 hours). Defendant paid Ms. Wofford an additional $5.25 for the 8 overtime hours, or an additional $42.00.  In this manner, she effectively received one and one-half times her weighted average "regular rate" for 8 hours of overtime work.   Her earnings statement for this workweek thus reflects her compensation as follows:

- December 28, 2018 (48 total hours: 24 at $10.00 and 24 at $11.00; 8 OT hours at $5.25; total pay $546.00)[1]

38.     On May 9, 2019, Defendant's Vice President of Operations sent an email to Ms. Wofford, attached hereto as Exhibit D in redacted form, stating the following:

> I understand that you are currently working and average of 48 hours per weeks and you are scheduled for the same number of hours going forward, which put you in an overtime situation.  *We offer our employees opportunity to work overtime (at their own choice) but, unfortunately, it requires an adjustment in the employee's hourly pay rate.  In your case, it means, going forward your pay rate will be $9.25 per hour*.
>
> Please note that you also have a choice to work only up to 40 hours per week which will not require any adjustment in your pay rate.  Please call your office or email us immediately – if you wish to go with that choice.  Also, please note that once you choose to work overtime and your hour pay rate is adjusted, it won't be revised again, if you do not work overtime for a week in between or if you are still scheduled to work overtime.  It will only be adjusted back to the prior rate once you have worked two consecutive weeks with 40 hours or less and you no longer are scheduled more than 40 hours per week.

Id. (emphasis added; underlining in original).

39.     Ms. Wofford was first subjected to a reduced "regular rate" in June 2019.  While her pay was not reduced to $9.*25*, her pay check dated June 7, 2019 reflected that she received $9.*75* per hour for 23.5 hours and $10 per hour for 23.75 hours.

40.     Ms. Wofford's rate remained at the reduced level of $9.75 in all subsequent workweeks in which she worked over 40 hours, up to and including the most recent earnings statement she has received as of the filing of this action.

---

[1]     Plaintiff does not challenge this method of determining a "weighted average regular rate."

41.     In the following workweeks, Ms. Wofford worked over 40 hours, and was effectively paid for all hours under 40 at the lowered, reduced "regular rate" of $9.75, and at one and one-half times her so-called "regular rate" for all hours over 40 (i.e., $14.625, or close to it). Her earnings statements for these workweeks (with the "pay dates" identified below) thus reflect her compensation as follows:

- June 21, 2019 (48 total hours at $9.75; 8 OT hours at $4.875; total pay $507.00)

- June 28, 2019 (48.25 total hours at $9.75; 8.25 OT hours at $4.8754; total pay $510.66)

- July 26, 2019 (50.25 total hours at $9.75; 10.25 OT hours at $4.8753; total pay $539.91)

- August 2, 2019 (47.25 total hours at $9.75; 7.25 OT hours at $4.8748; total pay $496.03)

- August 9, 2019 (47.5 total hours at $9.75; 7.5 OT hours at $4.8753; total pay $499.69)

- September 6, 2019 (40.02 total hours at $9.75; .02 OT hours at $4.875; total pay $390.30)

- September 27, 2019 (47.75 total hours at $9.75; 7.75 OT hours at $4.875; total pay $503.34)

- October 4, 2019 (47.75 total hours at $9.75; 7.75 OT hours at $4.875; total pay $503.34)

- October 18, 2019 (47.25 total hours at $9.75; 7.25 OT hours at $4.875; total pay $496.03)

- October 25, 2019 (48 total hours at $9.75; 8 OT hours at $4.875; total pay $507.00)

- November 1, 2019 (47.5 total hours at $9.75; 7.5 OT hours at $4.875; total pay $499.69)

- December 20, 2019 (56 total hours at $9.75; 16 OT hours at $4.90; total pay $624.40)

42.     In the following workweeks, Ms. Wofford worked over 40 hours, and was effectively paid for hours under 40 at a split rate, and at one and one-half times her weighted average "regular rate" for all hours over 40, as determined by the method discussed above in Paragraphs 36-37.   Her earnings statements for these workweeks (with the "pay dates" identified below) thus reflect her compensation as follows:

- June 7, 2019 (47.25 total hours: 23.5 at $9.75 and 23.75 at $10.00; 7.25 OT hours at $4.9383; total pay $502.43)

- July 12, 2019 (48 total hours: 36 at $9.75 and 12 at $11.75; 8 OT hours at $5.125; total pay $533.00)

- July 19, 2019 (47.5 total hours: 24 at $9.75 and 23.5 at $11.00; 7.5 OT hours at $5.184; total pay $531.38)

- August 16, 2019 (40.25 total hours: 24.25 at $9.75 and 16 at $11.00; .25 OT hours at $1.30; total pay $413.74)

- September 13, 2019 (44 total hours: 8 at $9.75, 10 at $10.00, 12 at $11.00; 4 OT hours at $5.0971; total pay $470.39)

- November 8, 2019 (48 total hours: 32 at $9.75 and 16 at $10.50; 8 OT hours at $5.025; total pay $520.20)

- November 29, 2019 (47.75 total hours: 39.75 at $9.75 and 8 at $11.00; 7.75 OT hours at $5.0005; total pay $514.31)

- December 6, 2019 (54 total hours: 38 at $9.75 and 16 at $10.00; 14 OT hours at $4.9204; total pay $599.39)

- December 13, 2019 (48 total hours: 40 at $9.75 and 8 at $10.00; 8 OT hours at $4.90; total pay $509.20)

- January 3, 2020 (50 total hours: 20 at $9.75, 12 at $11.00, and 18 at $11.75; 10 OT hours at $5.3472; total pay $591.97)

- January 17, 2020 (47.75 total hours: 39.75 at $9.75 and 8 at $11.00; 7.75 OT hours at $5.0005; total pay $514.31)

43.     In the following workweeks, Ms. Wofford worked over 40 hours, and was paid for all hours worked either at a split rate or $9.75, but did *not* receive one and one-times a "regular rate" for hours over 40.  Her earnings statements for these workweeks (with the "pay dates" identified below) thus reflect her compensation as follows:

- August 23, 2019 (47.25 total hours: 39.75 at $9.75 and 7.5 at $11.00; total pay $470.06)

- August 30, 2019 (44.48 total hours at $9.75; total pay $433.68)

44.     In each of the workweeks identified above in Paragraphs 41-43, Plaintiff was subjected to a "pay deduction" in her regular rate and thus denied compensation to which she is entitled.

45.     Defendant's "pay deduction" practice is ongoing.

### Defendant Willfully Violated the FLSA and PMWA

46.     The overtime requirements of the FLSA, 29 U.S.C. § 207(a), and the guidance promulgated at 29 C.F.R. § § 778.316, 778.327, and 778.500, plainly forbid employers from subjecting employees to a "pay deduction" scheme in which a lower "regular rate" is paid when an employee works overtime, and the new lower rate is justified by no factor other than the fact that the employee worked overtime.

47.     The PMWA, which is at least as protective of workers' rights to wages and overtime as the FLSA, likewise forbids such a scheme.

48.     As a result of this practice, Defendant deprives its home health care companion employees of both the straight-time and overtime pay that they would have received had they been paid at their true "regular rate," including in the weeks in which it purportedly pays for overtime at one and one-half times their so-called "regular rate."

49.     For example, comparing two of the workweeks cited above demonstrates that Ms. Wofford was deprived wages that she would have otherwise received in the absence of the "pay deduction":

- December 28, 2018 (48 total hours: 24 at $10.00 and 24 at $11.00; 8 OT hours at $5.25; total pay $546.00)

- June 21, 2019 (48 total hours at $9.75; 8 OT hours at $4.875; total pay $507.00)

50.     Thus, Ms. Wofford was deprived of $39.00 in the workweek of June 21, 2019.

51.     In the workweek with the pay date of December 28, 2018, Ms. Wofford effectively received $126.00 in overtime pay ($10.50 multiplied by 1.5 multiplied by 8 hours) and $420.00 in straight-time pay ($10.50 multiplied by 40 hours).

52.     In the workweek with the pay date of June 21, 2019, she effectively received $117.00 in overtime pay ($9.75 multiplied by 1.5 multiplied by 8 hours) and $390.00 in straight-time pay ($9.75 multiplied by 40 hours).

53.     Thus, of the $39.00 that Ms. Wofford lost in the workweek of June 21, 2019, $9.00 is attributable to lost overtime wages and $30.00 is attributable to lost straight-time wages.

54.     Upon information and belief, Defendant is aware of the requirements of FLSA and Pennsylvania law, and seeks to intentionally evade those requirements by using the "pay deduction" scheme described above.

55.     Defendant's conduct was in willful disregard of its obligations under the FLSA and Pennsylvania law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

**The Case Should be Certified as an "Opt-In" Collective Action Under the FLSA**

56.     Plaintiff brings this action under the FLSA, 29 U.S.C. § 216(b), as an "opt-in" collective action on behalf of all similarly situated individuals who worked as home health care companions for Defendant at any time within three years prior to this action's filing date through the final disposition of this case, and who were subject to Defendant's "pay deduction" scheme described above.

57.     At all relevant times, Plaintiffs and said individuals are and have been similarly situated, have had substantially similar job requirements, are subject to the same pay structure, and have been subject to Defendant's common "pay deduction" practice.

58.     The number and identity of these individuals may be determined from records under the control of Defendant.

59.     These individuals would benefit from the issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join in the lawsuit.

**The Case Should be Certified as a Class Action Under Fed. R. Civ. P. 23**

60.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff also bring this action under the PMWA on behalf of all similarly situated individuals who worked as home health care companions for Defendant at any time within three years prior to this action's filing date through the final disposition of this case, and who were subject to Defendant's "pay deduction" scheme as described above.

61.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff also bring this action under the doctrine of unjust enrichment on behalf of all similarly situated individuals who worked as home health care companions for Defendant at any time within four years prior to this

action's filing date through the final disposition of this case, and who were subject to Defendant's "pay deduction" scheme as described above.

62.     Upon information and belief, Defendant employs hundreds of similarly situated home health care companions, along with Plaintiff.  See Exhibit B at Section 2.  Upon information and belief, many of these individuals were subjected to the "pay deduction" scheme described above.  The number of class members is therefore large enough that joinder of individual members in this action is impracticable.

63.     There are common questions of law and fact, including whether Defendant's practice violates class members' rights under the PMWA, and whether Defendant was unjustly enriched by this practice.

64.     For the same reasons, the claims of class members are typical of the claims of the Plaintiff, and there is no conflict between Plaintiff and any other class member.

65.     Plaintiff will fairly and adequately protect the interests of the class.  Attorneys for Plaintiff are experienced and capable class action litigators and will fairly and adequately represent the interests of the class.

66.     This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A).  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendant.

67.     This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendant has acted on grounds generally applicable to the classes by subjecting all of them to the "pay deduction" scheme described above.

68.     Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT ONE**

**Fair Labor Standards Act, 29 U.S.C. § 207(a)**
**Overtime and Overtime Gap time Violations**
**(Plaintiff, on behalf of the Collective Class, against Defendant)**

69.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70.     Under the FLSA, an employer must pay an employee at least one and one-half times her regular rate of pay for each hour worked in excess of 40 hours per workweek.  29 U.S.C. § 207(a)(1).

71.     The regulations at 29 C.F.R. § § 778.316, 778.327, and 778.500 plainly forbid employers from subjecting employees to a "pay deduction" scheme where an employer lowers the employee's "regular rate" based purely on the fact that the employee works overtime.

72.     The regulation at 29 C.F.R. § 778.315 also states that "[o]vertime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. *This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid*."

73.     Defendant's "pay deduction" scheme unlawfully deprives Plaintiff and other similarly situated employees of overtime compensation for hours worked over 40 in a workweek.

15

For example, in the workweek described above in Paragraphs 49-53, Plaintiff was denied overtime compensation in the amount of $9.00.

74.     Defendant's "pay deduction" scheme also unlawfully deprives Plaintiff and other similarly situated employees of straight-time compensation for hours worked *under* 40 in a workweek with overtime ("overtime gap time").  For example, in the workweek described above, Plaintiff was denied overtime gap time compensation in the amount of $30.00.

75.     Assuming that Defendant's "pay deduction" scheme is found to violate the FLSA, if Plaintiff is able to recover the overtime compensation that she would have otherwise received, but not able to recover the overtime gap time compensation she would have otherwise received, then she will be unable to recover the majority of the wages of which she was deprived a result of the "pay deduction" scheme, and Defendant will still benefit from the scheme.

76.     The same will be true of any similarly situated employee who worked overtime, but less than 66.67 total hours in a workweek, because overtime paid at one and one-half times an employee's regular rate only exceeds 40 hours paid at an employee's regular rate when the overtime hours exceed 26.67.

77.     As a result of Defendant's willful acts, as recited above, Plaintiff and members of the collective class have been unlawfully deprived of overtime and overtime gap time compensation.

## COUNT TWO

### Pennsylvania Minimum Wage Act 43 P.S. § 333.104(c)
### Overtime and Overtime Gap time Violations
### (Plaintiff, on behalf of the Rule 23 PMWA Class, against Defendant)

78.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

79.     Like the FLSA, the PMWA, which is at least as protective of workers' rights as the FLSA, forbids Defendant's "pay deduction" scheme.

80.     As a result of Defendant's willful acts, as recited above, Plaintiff and members of the Rule 23 class have been deprived of overtime and overtime gap time compensation.

## COUNT THREE

### Unjust Enrichment
### (Plaintiff, on behalf of the Rule 23 Unjust Enrichment Class, against Defendant)

81.      Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

82.     Defendant benefitted from the unpaid work of Plaintiffs and the class members and it would be unjust for Defendant to keep the wages related to this work.

83.     Plaintiffs and the class members are entitled to restitution of all unpaid wages which are due.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.     That the Court declare that this action is a proper FLSA collective action and certify the proposed collective class pursuant to 29 U.S.C. § 216 after notice to the collective class;

B.     That the Court certify this action as a Rule 23 class action;

C.     That the Court declare that Defendant willfully violated its statutory obligations by depriving Plaintiff and other members of the collective class and Rule 23 classes of the wages to which they are entitled;

D.      That the Court award to Plaintiff and members of the collective class and Rule 23 classes unpaid wages, restitution for same, liquidated damages, and pre and post judgment interest thereon;

E.      That the Court award attorneys' fees and costs of the action, to be paid by Defendant; and,

F.      That the Court enter such other relief as it shall deem just and proper.

Respectfully submitted,

Dated:  January 17, 2020

*s/ Edward J. Feinstein*
Edward J. Feinstein (PA No. 29718)
efeinstein@fdpklaw.com
Ruairi McDonnell (PA I.D. 316998)
rmcdonnell@fdpklaw.com
Emily Wittlinger (PA No. 326284)
ewittlinger@fdpklaw.com
**FEINSTEIN DOYLE PAYNE**
    **& KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA  15219
T.: (412) 281-8400
F.: (412) 281-1007

*Attorneys for Plaintiff*