IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KWEILIN WOFFORD, individually and on behalf of others similarly situated, | ) ) ) 2:20-cv-00084-RJC ) |
| Plaintiff, | ) ) ) Judge Robert J. Colville ) |
| vs. | ) ) |
| SEBA ABODE, INC., D/B/A BRIGHTSTAR CARE and UDAY ROY, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Conditional Certification (ECF No. 31) filed by Plaintiff Kweilin Wofford ("Plaintiff"). Plaintiff alleges that she is a home health care companion who worked for Defendants Seba Abode, Inc., D/B/A BrightStar Care ("Seba Abode"), a home health agency, and its owner and President, Uday Roy (collectively, "Defendants"). Mot. 1, ECF No. 31. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by reducing employees' regular hourly rates if those employees worked over forty (40) hours per workweek, thereby violating the FLSA's mandate that employers pay employees who work overtime at least "one and one-half times" their "regular rate" of pay. *Id.* Plaintiff moves for conditional certification of the following proposed collective:

> All present and former non-exempt employees of Seba Abode, Inc. who were paid a reduced hourly rate as a result of working over 40 hours a week within three years of [the date of the Court's order granting this motion].

*Id.* Plaintiff further requests that the Court:

> (i) [G]rant conditional certification of the employees described above; (ii) order Defendants to produce a list of all such individuals, including each person's name,

1

employee ID number, last known address, last known email address, and last date of employment; (iii) approve the form of the Notice attached [to Plaintiff's Motion] as Exhibit 1; (iv) permit Plaintiff to send that Notice by first-class U.S. mail and email to all such persons within 7 days of receipt of the list; (v) permit Plaintiff to re-mail and re-email that Notice to any nonresponsive persons within 30 days of the date of the original provision of Notice; and (vi) permit such persons up to 60 days from the date of the original provision of Notice to opt-in to the case by returning the Consent to Opt-In form to Plaintiff's Counsel.

*Id.* at 1-2.

The Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's Motion has been fully briefed, and is ripe for disposition.

## I.   Factual Background & Procedural History

In her (presently operative)[1] Amended Collective and Class Action Complaint ("Complaint") (ECF No. 22), Plaintiff sets forth the following relevant allegations with respect to the timeframe relevant herein:

Plaintiff worked for Defendants as a home health care companion beginning in March of 2018 and worked out of Defendants' Monroeville office as a member of the "BrightStar Monroeville Southeast Team." Compl. ¶ 1; 31, ECF. No. 22.[2] Home health care companions provide assistance to elderly individuals and individuals with disabilities in their homes, and such individuals are Defendants' clients. *Id.* at ¶ 29. Defendant Seba Abode, Inc. operates four

---

[1] The Court notes that Plaintiff has filed a "Motion to Modify Case Management Order and Amend Her Complaint" (ECF No. 46), which this Court has considered and will grant in conjunction with the Motion for Conditional Certification. Plaintiff's Motion seeks to amend the Complaint to add Tara Sears and Nicki Odell as named plaintiffs and proposed class representatives. Mot. to Amend 1, ECF No. 46. Tara Sears and Nicki Odell opted-in to the instant action to pursue FLSA claims on October 22, 2020, *see* ECF Nos. 29 and 30, and Defendants do not assert, in any material way, that the amendments set forth in Plaintiff's proposed amended complaint will have any impact or effect on the Court's consideration of the present Motion for Conditional Certification. *See generally* Br. in Opp'n to Mot. to Amend, ECF No. 48 (setting forth argument that the amendment will affect Plaintiff's anticipated class certification motion with no mention of its effect on the present Motion); *see also* Joint Motion to Stay Pending Deadlines for Class Certification and Dispositive Motions, ECF No. 40 (same).

[2] Plaintiff's proposed amended complaint indicates that her employment with Defendants ended in May of 2020. *See* Mot. to Amend Ex. A at ¶ 1, ECF No. 46-1.

franchises of BrightStar Care in Pennsylvania, including in Erie, Monroeville, Cranberry, and Mt. Lebanon. *Id.* at ¶ 2.

At or around the time Plaintiff was hired, she received a document titled "Orientation Program Guidelines," which provided, in pertinent part:

> C. You are responsible for keeping track of your own hours. You may work no more than forty hours weekly to remain at your base rate of $9/hour. You are not required to work overtime. Therefore, if you choose to work overtime (above 40 hours per week), you are subject to a pay adjustment which will be announced to you in writing prior to the change.

Compl. Ex. C at 2, ECF No. 22-3. Plaintiff asserts that her actual beginning "base rate" was $10 per hour, that her pay rate fluctuated during her first four weeks of employment with Defendants, and that, with the exception of a few workweeks in which her hourly pay rate increased, Plaintiff regularly received payment from April 20, 2018 through June of 2019 based upon a "split rate arrangement" of $10.00 per hour for work performed on weekdays and $11.00 per hour for work performed on weekends. Compl. ¶¶ 34-38.

With the exception of one workweek, Plaintiff worked less than 40 hours per workweek from the beginning of her employment until December of 2018. *Id.* at ¶ 39. Beginning in December of 2018, Plaintiff began working four 12-hour shifts weekly, for a total of 48 hours per workweek, and was compensated for the next several months in accordance with a $10/$11 per hour split rate arrangement and received one and one-half times her "regular rate" of pay for hours worked over 40 in a workweek.[3] *Id.* at ¶¶ 41-42. On May 9, 2019, Plaintiff received an email from Defendants' Vice President of Operations that provided:

> I understand that you are currently working and [sic] average of 48 hours per weeks [sic] and you are scheduled for the same number of hours going forward, which puts you in an overtime situation. We offer our employees opportunity to work overtime (at their own choice) but, unfortunately, it requires an adjustment in the

---

[3] Plaintiff's overtime compensation was calculated utilizing a "weighted average regular rate," Compl. ¶¶ 42-43, ECF No. 22, and Plaintiff does challenge this method of calculation, *id.* at ¶ 43 n.1.

3

>employee's hourly pay rate.  <u>In your case, it means, going forward your pay rate will be $9.25 per hour.</u>
>
>Please note that you also have a choice to work only up to 40 hours per week which will not require any adjustment in your pay rate.  Please call your office or email us immediately – if you wish to go with that choice.  Also, please note that once you choose to work overtime and your hour pay rate is adjusted, it won't be revised again, if you do not work overtime for a week in between or if you are still scheduled to work overtime.  It will only be adjusted back to the prior rate once you have worked two consecutive weeks with 40 hours or less and you no longer are scheduled more than 40 hours per week.

Compl. Ex. D, ECF No. 22-4; Compl. ¶ 44, ECF No. 22.

Plaintiff was first paid a reduced pay rate of $9.75 per hour in June of 2019.  Compl. ¶¶ 45-46, ECF No. 22.  In some workweeks from June of 2019 through December of 2019, Plaintiff was compensated at a rate of $9.75 for all hours worked up to 40 hours per workweek, and was paid overtime of one and one-half the rate of $9.75 for hours worked in excess of 40 per workweek. *Id.* at ¶ 47.  In other workweeks from June of 2019 through January of 2020, Plaintiff was paid a split rate for all hours worked up to 40 hours per workweek, and was paid overtime of one and one-half her "weighted average regular rate," which was calculated in the manner discussed above in Footnote 3, for hours worked in excess of 40 per workweek.  *Id.* at ¶ 48.  In August of 2019, Plaintiff was paid at a rate of $9.75 per hour or at a split rate for all hours worked during two workweeks, and was paid no overtime compensation despite Plaintiff having worked in excess of 40 hours during those workweeks.  *Id.* at ¶ 49.  Plaintiff asserts that she was subjected to a "pay deduction" in her "regular rate" beginning in June of 2019, and that the same continued beyond January of 2020.  *Id.* at ¶¶ 50-51.

In alleging Defendants' pay practices, Plaintiff also cites to the "BrightStar Care Employee Handbook" ("Employee Handbook"), *see* Compl. Ex. B, ECF No. 22-2,[4] which provides:

**2.2 Types of Worker**

---

[4] Defendants refer to this document as "Seba Abode's 2016 Employee Handbook."  Answer ¶ 20, ECF No. 23.

> This section distinguishes between the different types of workers the Company employs. Employee status is established at the time of hire and may only be altered via a written statement signed by the Company.
>
> *Exempt vs Non-Exempt*
> The majority of employees are non-exempt, meaning they are entitled by law to at least minimum wage and premium pay for overtime. Exempt employees are not subject to these laws. Exempt status is defined by particular standards set by state law and the Federal Labor Standards Act (FLSA). This class of employee is usually an executive, an administrator, or a highly paid specialist such as a programmer.
>
> *Regular Employees*
> Regular employees work a regular schedule, either on a full-time or part-time basis. All field employees are hired as part-time due to their own availability which must match the hours available by our clients. To be considered full-time, an employee must work a maximum of 40 hours per week. Any regular employee who chooses to work above 40 hours a week is able to do so, but will be subject to a deduction in pay as based upon the number of hours agreed to per week at the discretion of the Payroll department.

Compl. Ex. B at 5, ECF No. 22-2. The Employee Handbook further provides:

> **3.2 Wages**
> Wages vary from employee to employee and are based on level of skill and the needs of our clients. The Company conducts regular evaluations of all employees and issues promotions as it sees fit. Orientation for all regular employees in [sic] paid after all pre-employment forms are submitted and the employee works 40 hours.
>
> In additional [sic] to regular pay, employees may have the option of earning overtime pay.
>
> *Overtime*
> A non-exempt employee may work overtime on the terms defined by Pennsylvania law pending prior authorization by his or her manager. As mentioned previously, any employees [sic] who chooses to work above 40 hours per week on an ongoing and continuous basis, will be subject to a pay deduction based on the number of hours works per week. All deductions will be announced prior to the change, as dictated by Pennsylvania law.

*Id.* at 6.

Plaintiff filed the Complaint on June 8, 2020. Defendants filed an Answer (ECF No. 23) on June 22, 2020. Following an Initial Case Management Conference in this matter, the parties

5

engaged in the first phase of discovery, which was limited to discovery relevant to class and conditional collective certification and/or identification of potential additional defendants. *See* Case Management Order ¶ 2, ECF No. 19. As noted above, Tara Sears and Nicki Odell opted-in to the instant action to pursue FLSA claims on October 22, 2020. ECF Nos. 29 and 30. Plaintiff filed her Motion for Conditional Certification on October 22, 2020, along with a Brief in Support (ECF No. 32). Defendants filed a Brief in Opposition (ECF No. 36) to Plaintiff's Motion on November 23, 2020. Plaintiff filed a Reply (ECF No. 37) on December 4, 2020. Defendants filed a Notice of Supplemental Authority (ECF No. 41) on February 12, 2021.[5]

## II.     Legal Standard

Section 216(b) of the FLSA permits employees to bring a collective action on behalf of themselves and other "similarly situated" employees against an employer for violation of the FLSA. 29 U.S.C. § 216(b). A collective action depends on the participation of opt-in plaintiffs, and a court must "decide whether those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). Being similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012). In the Third Circuit, courts utilize a "two-step certification process" in determining whether plaintiffs are "similarly situated." *Halle*, 842 F.3d at 224.

---

[5] The supplemental authority cited by this Notice is a January 12, 2021 Opinion of the United States Court of Appeals for the Fifth Circuit in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), which Defendants assert rejected the "two-step certification process" discussed below. Given the binding precedent cited in this Memorandum Opinion's Legal Standard section below, the Court summarily rejects Defendants' argument respecting what they believe is "the proper analysis for permitting notice to issue under the Fair Labor Standards Act[.]" Notice 1-2, ECF No. 41.

Conditional certification, the first step in the two-step process, "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536 n.4). "In other words, Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014). "Articulating the differences [between the] two stages of the collective action certification analysis, the Third Circuit has explained that the initial step of conditional certification asks whether similarly situated plaintiffs do, in fact, exist; by contrast, the second stage asks whether the specific plaintiffs who have opted-in are, in fact, similarly situated to the named plaintiffs." *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078, at *5 (W.D. Pa. Oct. 26, 2016) (citing *Zavala*, 691 F.3d at 536 n.4). "Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (quoting *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)). Given the "modest burden" at the conditional certification stage, "motions for conditional certification are generally successful." *Id.*

"The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members," *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)), and the Third Circuit has explained that "[c]onditional certification, therefore, is not a true certification, but rather an exercise of a district court's

discretionary authority to oversee and facilitate the notice process," *id.* (citing *Zavala*, 691 F.3d at 536). In *Halle*, the Third Circuit further explained:

> While conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action. [*Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)]. Nevertheless, "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23." *Genesis Healthcare*, 133 S.Ct. at 1532.

*Id*.

At the final certification stage, the second step in the two-step process, the burden is on the plaintiffs to establish by a preponderance of the evidence that they satisfy the similarly situated requirement. *Zavala*, 691 F.3d at 537. "Following the notice and discovery period, the defendant typically moves the Court to 'decertify' the collective action on the ground that the opt-in plaintiffs are not similarly situated." *Goodman v. Burlington Coat Factory*, No. CIV.A. 11-4395 JHR, 2012 WL 5944000, at *3 (D.N.J. Nov. 20, 2012). "After discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). In determining whether plaintiffs are similarly situated at the final certification stage, courts in the Third Circuit utilize an "ad-hoc approach, which considers all the relevant factors and makes a factual determination on a case-by-case basis." *Zavala*, 691 F.3d at 536. The United States Court of Appeals for the Third Circuit has explained:

> Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* at 536–37.

### III.   Discussion

Plaintiff asserts that Defendants' pay practices amount to a "'pay deduction' scheme in which a lower 'regular rate' is paid when an employee works overtime, and the new lower rate is justified by no factor other than the fact that the employee worked overtime," and further asserts that such a policy is not permissible under the FLSA. Compl. ¶ 52, ECF No. 22. Plaintiff further asserts:

> As a result of this practice, Defendants deprive its home health care companion employees of both the straight-time and overtime pay that they would have received had they been paid at their true "regular rate," including in the weeks in which it purportedly pays for overtime at one and one-half times their so-called "regular rate."

*Id.* at ¶ 54. Plaintiff asserts that conditional certification is appropriate in this matter because: (1) "Defendants maintained a written policy whereby employees that worked over 40 hours a week on a regular basis were subjected to a 'deduction in pay as based upon the number of hours' they actually worked"; (2) Plaintiff was actually subjected to this policy, and was deprived of wages to which she was entitled; and (3) Defendants have subjected other employees to this policy. Br. in Supp. 4, ECF No. 32.

Defendants argue that Plaintiff's Motion should be denied because she fails to identify other similarly situated employees who were paid a reduced hourly rate as a result of working over 40 hours per workweek. Br. in Opp'n 1, ECF No. 36. Defendants assert that Plaintiff relies only on: (1) unauthenticated documents without establishing the documents' effective dates or who they

9

applied to; (2) her own experience; and (3) the experience of two other employees who worked in the same location; and further assert that the same is insufficient for purposes of conditional certification. *Id.*

### A. Conditional Certification

In order for conditional certification to be granted, Plaintiff must make a "modest factual showing" of: "(1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014). In support of her Motion for Conditional Certification, Plaintiff has submitted the Declaration of Plaintiff (ECF No. 32-1), attached to which are the following Exhibits: (1) the "Orientation Program Guidelines"; (2) the Employee Handbook; (3) the May 9, 2019 email from Defendants' Vice President of Operations to Plaintiff;[6] and (4) copies of Plaintiff's earnings statements (ECF No. 32-5) for the pay dates of May 17, 24, and 31 of 2019 and June 7, 21, and 28 of 2019, which purportedly display Plaintiff's hourly rates before and after her pay rate reduction. Plaintiff has also submitted the Declarations of Tara Sears (ECF No. 32-6) and Nicki Odell (ECF No. 32-10), each of which attaches an email (ECF Nos. 32-7; 32-11) received by Ms. Sears and Ms. Odell, respectively, that is materially identical to the email attached to Plaintiff's Declaration and quoted above, though the emails received by Ms. Sears and Ms. Odell were sent by the Branch Director of Defendants' Monroeville office, *see* ECF Nos. 32-7; 32-11. Ms. Sears and Ms. Odell have also submitted copies of earnings statements that purportedly display each individual's hourly rates before and after their respective pay rate reduction. *See* ECF No. 32-8; 32-9; 32-12; 32-13. The Court has reviewed each of the Exhibits submitted by Plaintiff,

---

[6] Each these first three Exhibits was also attached to the Complaint, and the most relevant provisions of these documents are quoted above by this Court in describing the factual background in this case.

10

as well as the entire record, and finds that Plaintiff has met her burden with respect to conditional certification.

Initially, Plaintiff has set forth sufficient evidence of an employer policy in this case, specifically Defendants' policy of subjecting their employees to pay rate reductions if those employees worked over forty (40) hours per workweek. This policy is readily identified and evidenced by the Exhibits submitted by Plaintiff, and is quite clearly set forth in the provisions of the "Orientation Program Guidelines" and the Employee Handbook quoted above. Moreover, Plaintiff has set forth evidence, specifically her Declaration, the May 9, 2019 email from Defendants' Vice President of Operations, and the earning statements attached to her Declaration, that tend to show that Defendants implemented this policy of reducing the pay rate of employees who worked overtime. While Defendants assert that their pay practices were lawful, and further assert that they intend to challenge Plaintiff's assertion that their pay practices were unlawful at a later date, *see* Br. in Opp'n 5-6 n.2, ECF No. 36, they fail to raise any cognizable challenge at this time to Plaintiff's assertion of an employer policy of reducing the pay rates of employees who worked overtime during the timeframe relevant herein.

Similarly, the Complaint, Plaintiff's Motion and relevant briefing, and the Exhibits discussed above, including the May 9, 2019 email and the copies of Plaintiff's earnings statements, also constitute, at least, a modest factual showing that Plaintiff was subjected to a pay reduction as a result of working overtime, i.e. the employer policy at issue. The similar evidence submitted with respect to Ms. Sears and Ms. Odell likewise amounts to a modest factual showing that Ms. Sears and Ms. Odell were also subjected to a pay reduction as a result of working overtime, i.e. that the policy at issue affected them in the same way.

Defendants challenge the authenticity of the documents at issue, Br. in Opp'n 7, ECF No. 36, but offer no material explanation as to why the Court should not consider these documents. Plaintiff's Declaration states that Plaintiff received both the "Orientation Program Guidelines" and the Employee Handbook from Seba Abode at the beginning of her employment in March of 2018, Wofford Decl. ¶¶ 3-4, ECF No. 32-1, and Plaintiff has further submitted evidence that the policies set forth therein were implemented during the course of her employment with Defendants, *see* May 9, 2019 Email, ECF No. 32-4; Plaintiff's Earnings Statements, ECF No. 32-5. The Court further notes that Defendants themselves refer to the Employee Handbook as "Seba Abode's 2016 Employee Handbook," Answer ¶ 20, ECF No. 23, and offer no explanation as to why this document would be inapplicable during the timeframe relevant herein. The Court finds Defendants' arguments respecting the authenticity of the "Orientation Program Guidelines" and the Employee Handbook, each of which prominently displays the name and logo "BrightStar Care" on the first page, to be meritless.[7]

Defendants further assert that the evidence submitted by Plaintiff is insufficient to establish that there exist employees other than Plaintiff, Ms. Sears, and Ms. Odell who were subjected to the policy at issue. Br. in Opp'n 6, ECF No. 36. Initially, the Court again notes that the Declarations, emails, and earning statements submitted with respect to Ms. Sears and Ms. Odell amount to a modest factual showing that specific employees other than Plaintiff, namely Ms. Sears and Ms. Odell, were subjected to the exact same treatment as Plaintiff. The Court further finds that Defendants' written policy, as evidenced by the "Orientation Program Guidelines" and the Employee Handbook, when considered in conjunction with the earning statements of, and emails received by, Plaintiff, Ms. Sears, and Ms. Odell, as well as the representation in Plaintiff's

---

[7] Defendants have admitted that Seba Abode has franchise rights to do business as BrightStar Care in four territories in Pennsylvania, including territories in Erie, Monroeville, Cranberry, and Mt. Lebanon. Answer ¶ 2, ECF No. 23.

12

Declaration that states that Plaintiff is personally aware of other employees that worked overtime and were subjected to a pay rate reduction as a result, Wofford Decl. ¶ 9, ECF No. 32-1, constitute sufficient evidence setting forth a modest factual showing that other employees who are similarly situated to Plaintiff exist.

Finally, Defendants assert that, because Plaintiff, Ms. Sears, and Ms. Odell each worked out of Defendants' Monroeville office, any collective in this case should be limited only to employees who worked at Defendants' Monroeville office, and should exclude individuals who worked at Defendants' three other Western Pennsylvania locations. Br. in Opp'n 7, ECF No. 36. The Court rejects this argument. Initially, the proposed collective in this matter is generally limited in geographic scope, in that each of Defendants' four locations is located in Western Pennsylvania. Further, and more importantly, the "Orientation Program Guidelines" and the Employee Handbook which set forth Defendants' written policy do not explicitly state that they apply only to Defendants' Monroeville office. The Employee Handbook provides: "*[a]ny regular employee who chooses to work above 40 hours a week is able to do so, but will be subject to a deduction in pay as based upon the number of hours agreed to per week at the discretion of the Payroll department,*" Compl. Ex. B at 5, ECF No. 22-2 (emphasis added), and further provides: "[a] non-exempt employee may work overtime on the terms defined by Pennsylvania law pending prior authorization by his or her manager. As mentioned previously, *any employees* [sic] who chooses to work above 40 hours per week on an ongoing and continuous basis, will be subject to a pay deduction based on the number of hours works per week," *id.* at 6 (emphasis added). These documents do not indicate, and Defendants do not advance direct argument, that either the "Orientation Program Guidelines" and the Employee Handbook are applicable only to employees at Defendants' Monroeville office. Further, the 2019 email received by Plaintiff from Defendants'

13

Vice President of Operations is addressed as being sent from "BrightStar Care of Erie, PA." For these reasons, the Court is satisfied that a conditionally certified collective in this case may include employees from each of Defendants' four Western Pennsylvania locations.

In light of all of the above, the Court will enter an Order conditionally certifying the following collective:

> All present and former non-exempt employees of Seba Abode, Inc. who were paid a reduced hourly rate as a result of working over 40 hours per workweek within three years of July 22, 2021.

### B. Notice

The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Defendants oppose both procedural elements and the content of the opt-in and notice forms submitted by Plaintiff. Br. in Opp'n 9-11, ECF No. 36.

While the Court will direct the parties to confer in an attempt to resolve their disagreements respecting the content of the notice and consent form, the Court finds, with respect to Plaintiff's request that the Court permit notice to be distributed through both mail and email, that these facilitative measures are appropriate under the circumstances of this case. *See Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) ("[I]it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers") (collecting cases). The court must monitor the distribution of notice to ensure it is "timely, accurate, and informative." *Vasquez v. CDI Corp.*, 2020 WL7227271, at *5 (E.D. Pa. Dec. 7, 2020) (citing *Hoffman-La Roche*, 493 U.S. at 172).

Plaintiff also requests that she be permitted to send a second letter and email at the half-way mark of the opt-in period, i.e. thirty (30) days, to those members of the collective who have not returned a consent form.  Br. in Supp. 9-10, ECF No. 32.  The Court finds Plaintiff's request to send a second letter and email to be reasonable and appropriate in this matter.  Courts in the Third Circuit regularly permit reminder letters.  *See Garcia v. Vertical Screen, Inc*., 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019); *Archer v. Defs., Inc.*, No. 18-CV-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018).  Rather than being redundant, "a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter."  *Belt*, 2020 WL 3829026, at *9.

In their Brief in Opposition, Defendants do not object to Plaintiff's request for an opt-in period of sixty (60) days for the collective members to return the consent form.  Accordingly, when the Court enters an order approving notice and consent forms in this matter, such an order will provide for a 60-day opt-in period.  The parties are directed to meet and confer regarding the contents of the notice and consent form to be provided to potential collective members.  Further, the parties shall meet and confer with respect to any schedule for phase two of discovery and shall, as directed by this Court's Order accompanying this Memorandum Opinion, file a joint proposed case management order, which shall also include a proposed briefing schedule for final certification of the FLSA collectives.

## IV. Conclusion

For the reasons discussed above, the Court will grant Plaintiff's Motion for Conditional Certification, but will defer entering an order with respect to notice at this time. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: July 22, 2021

cc: All counsel of record